

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-18-2007

# Prajoga v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4369

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Prajoga v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1090.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1090

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 05-4369 and 05-4957

———————

AGUS PRAJOGA;
ALBERTA HARMINTO,
Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES

———————

Petitions for Review of Orders of the
United States Department of Justice
Board of Immigration Appeals
(BIA Nos. A96-258-016 and A95-462-283)
Immigration Judge:  Honorable R. K. Malloy

———————

Submitted Under Third Circuit LAR 34.1(a)
May 8, 2007

Before:  RENDELL and JORDAN, Circuit Judges,
and VANASKIE*, District Judge.

(Filed   May 18, 2007  )

———————

OPINION OF THE COURT

———————

_____

   *Honorable Thomas I. Vanaskie, Judge of the United States District Court for the
Middle District of Pennsylvania, sitting by designation.

RENDELL, Circuit Judge.

I.

Agus Prajoga and Alberta Harminto petition for review of the denial of their applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Petitioners are citizens of Indonesia who allege that they were persecuted and have a well-founded fear of future persecution on account of their Chinese ethnicity and Christian religion.

II.

Alberta Harminto arrived in the United States in June 2001. She applied for asylum within one year of her arrival. Harminto alleges that, on account of her Chinese ethnicity, she endured frequent name calling and solicitations for money, was touched inappropriately while riding the bus on several occasions, and was forced to hide during the May 1998 riots in Indonesia. She also alleges that she was persecuted on account of her religion because one of the churches that she attended in Indonesia was bombed in late 2000, although she was not attending the church on that date.

Agus Prajoga arrived in the United States in January 2001. He applied for asylum in February 2003. Prajoga alleges that, on account of his Chinese ethnicity, he was mocked during high school by his teachers, robbed at knife point on two occasions, humiliated by a public bus driver, and frightened during the May 1998 riots in Indonesia.

The Immigration Judge ("IJ") denied Prajoga's application for asylum because he

did not apply for asylum within one year of his arrival in the United States and failed to demonstrate changed or extraordinary circumstances that would excuse the delay under 8 U.S.C. § 1158(a)(2)(D). The IJ then considered Prajoga's applications for withholding of removal and relief under the CAT. He concluded that the two robberies against Prajoga do not rise to the level of persecution and, furthermore, that these incidents were not condoned by the Indonesian government. He also found that Prajoga had failed to demonstrate that it is more likely than not that he would be tortured if returned to Indonesia. The IJ therefore denied Prajoga's applications for withholding of removal and relief under the CAT.

The IJ deemed Harminto's application for asylum to be timely, but concluded that she failed to establish that she suffered persecution during the May 1998 riots or at any other time in Indonesia. The IJ noted that Harminto did not suffer any physical harm during the riots and that she remained in Indonesia for three years thereafter to continue working and to complete annual reports for her employer. He also found that she did not suffer persecution on account of her religion even though one of the churches she had attended was bombed in 2000, and that she was able to attend her church without any interference from the Indonesian government. Finally, he concluded that Harminto failed to establish that it is more likely than not that she would be tortured if she returned to Indonesia. The IJ therefore denied Harminto's requests for asylum, withholding of removal, and relief under the CAT. However, he granted both petitioners voluntary

departure in lieu of removal.

The Board of Immigration Appeals ("BIA") affirmed the IJ's decision without opinion. Prajoga and Harminto then requested reconsideration of the BIA's decision and the BIA denied the request, noting that "[t]he record does not support a finding that either of the respondents suffered mistreatment that cumulatively reached the level of persecution or that they now possess a well-founded fear of persecution that is based even in part on either ethnicity or religion." App. 1-2. Petitioners filed timely petitions for review in this court, seeking relief from their final orders of removal and the denial of their motion for reconsideration by the BIA. These petitions were subsequently consolidated.

III.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a) to review final orders of removal. When the BIA affirms the IJ's decision without opinion, we review the IJ's decision. *See Partyka v. Atty. Gen.*, 417 F.3d 408, 411 (3d Cir. 2005). The IJ's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary. 8 U.S.C. § 1252(b)(4)(B).

In order to prove eligibility for asylum, a petition must show that he or she is "refugee" within the meaning of 8 U.S.C. § 1101(a)(42). A "refugee" is "any person who is outside any country of such person's nationality . . . and is unable or unwilling to avail

4

himself or herself of the protection of [] that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." § 1101(a)(42)(A). "A determination of whether an asylum applicant has suffered from 'persecution' or whether that individual has a 'well-founded fear of persecution' is factual and thus is entitled to deference." *Wang v. Gonzales*, 405 F.3d 134, 138 (3d Cir. 2005).

A petitioner's burden to prove eligibility for a grant of withholding of removal is higher than the burden to prove eligibility for asylum. The petitioner must establish a "clear probability," i.e., that it is more likely than not, that he would suffer persecution if he returns to his country of nationality. *See Ghebrehiwot v. Atty. Gen.*, 467 F.3d 344, 351 (3d Cir. 2006). Therefore, a petitioner who fails to establish his eligibility for a grant of asylum is necessarily ineligible for withholding of removal. *Id*.

Petitioners argue that the IJ erred in concluding that the attacks against petitioners in Indonesia were not motivated, at least in part, by petitioners' ethnicity or religion. *See Lie v. Ashcroft*, 396 F.3d 530, 535 (3d Cir. 2005) ("We have recognized that '[a] persecutor may have multiple motivations for his or her conduct, but the persecutor must be motivated, at least in part, by one of the enumerated grounds.'"). They further contend that the IJ erred in finding that the 1998 riots in Indonesia "had nothing to do with the ethnic Chinese population, but were in response to economic conditions in Indonesia, dissatisfaction with the president at that time and student demonstrations." App. 28.

5

They also maintain that the IJ erred in concluding that conditions are improving in Indonesia for citizens of Chinese descent. App. 30.

Finally, petitioners argue that the IJ erred in concluding that petitioners failed to establish that they would be tortured if they returned to Indonesia. We do not address this argument because petitioners did not appeal the IJ's decision on their CAT claims to the BIA and therefore failed to exhaust their administrative remedies as to this claim. *See Abdulrahman v. Ashcroft*, 330 F.3d 587, 594-95 (3d Cir. 2003) ("[A]n alien is required to raise and exhaust his or her remedies as to each claim or ground for relief if he or she is to preserve the right of judicial review of that claim.").

## A. Agus Prajoga

Prajoga concedes that we lack jurisdiction to review the IJ's determination that he failed to demonstrate changed or extraordinary circumstances that would excuse his delay in filing for asylum under 8 U.S.C. § 1158(a)(2)(D) and that our review is therefore limited to the denial of Prajoga's other applications. *See* 8 U.S.C. § 11589(a)(3); *Sukwanputra v. Gonzales*, 434 F.3d 627, 635 (3d Cir. 2006).

In reviewing Prajoga's claim for withholding of removal, the IJ found that the robberies against Prajoga in Indonesia did not rise to the level of persecution and that Prajoga failed to establish that it is more likely than not that he would suffer persecution if he returns to Indonesia. We find no error in the IJ's conclusion that these incidents, although serious, do not amount to persecution. *See Lie v. Ashcroft*, 396 F.3d 530, 536

6

(3d Cir. 2005) (finding that petitioner's "account of two isolated criminal acts, perpetrated by unknown assailants, which resulted only in the theft of some personal property and a minor injury, is not sufficiently severe to be considered persecution"). "Persecution" includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Kibinda v. Atty. Gen.*, 477 F.3d 113, 119 (3d Cir. 2007). "[P]ersecution refers only to 'severe' conduct and 'does not encompass all treatment our society regards as unfair, unjust or even unlawful or unconstitutional.' *Id*. (quoting *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993)). Since we find no basis to disturb the IJ's finding that the harms Prajoga suffered do not amount to persecution, we need not reach the IJ's findings as to the cause of the 1998 riots in Indonesia or the motivation for the attacks against petitioners in Indonesia.

## B. Alberta Harminto

In considering Harminto's claim for asylum, the IJ found that the incidents of fear and embarrassment that Harminto suffered in Indonesia, including the 1998 riots, did not rise to the level of persecution. The IJ noted that, although Harminto was afraid during the riots, she was not harmed during these events and her home and business were not damaged. The IJ further found that the bombing of a church in Harminto's town did not amount to persecution because Harminto did not regularly attend this church and the government had no involvement in the bombing and, in fact, took steps to protect the churches. We find no error in the IJ's conclusion that the harms suffered by Harminto do

7

not rise to the level of persecution. Since we find no basis to disturb the IJ's denial of Harminto's request of asylum on the grounds that she was not persecuted, we need not reach the IJ's findings as to the cause of the 1998 riots in Indonesia or the motivation for the attacks against petitioners in Indonesia.

The IJ also concluded that Harminto failed to establish that she has a well-founded fear of future persecution. The IJ found that Harminto traveled to Singapore in 1999 and then voluntarily returned to Indonesia a few days later. She remained in Indonesia for three years after the 1998 riots. The IJ concluded that "[t]hese are not the actions of someone who is so fearful of their [sic] lives that they must flee a country for safety." App. 29.

The IJ further found that, although there are still discriminatory laws on the books in Indonesia, "conditions are certainly improving for citizens of Chinese descent." App. 30. Harminto argues that this finding is erroneous. However, we do not agree that "any reasonable adjudicator would be compelled to conclude" that conditions in Indonesia are not improving for citizens of Chinese descent. *See* 8 U.S.C. § 1252(b)(4)(B). The IJ's finding is supported by substantial evidence, including the observation in the State Department's Report that Chinese cultural holidays are now openly celebrated in Indonesia. App. 295. We therefore have no basis to disturb the IJ's conclusion that Harminto failed to establish that she suffered past persecution or has a well-founded fear of future persecution.

8

Accordingly, we also find no error in the IJ's conclusion that Harminto failed to demonstrate her eligibility for withholding of removal. *See Ghebrehiwot v. Atty. Gen.*, 467 F.3d 344, 351 (3d Cir. 2006) (noting that, because standard for grant of withholding of removal is higher than that for eligibility for asylum, an alien who fails to qualify for asylum is necessarily ineligible for withholding of removal).

IV.

We review the BIA's denial of petitioners' motion for reconsideration for abuse of discretion. *I.N.S. v. Abudu,* 485 U.S. 94, 110 (1988). As we find no error in the denial of petitioners' applications for relief, we have no reason to conclude that the BIA abused its discretion in denying petitioners' motion to reconsider the BIA's decision affirming the denial of petitioners' applications.

V.

For the foregoing reasons, we will deny the petitions for review.

9